IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Staffon Ray, | ) | Case No. 8:11-2774-MGL-JDA |
| | ) | |
| Petitioner, | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| v. | ) | |
| | ) | |
| State of South Carolina; Warden of | ) | |
| Stevenson Correctional Institution,[1] | ) | |
| | ) | |
| Respondents. | ) | |
| _____ | ) | |

This matter is before the Court on Respondent's motion for summary judgment. [Doc. 40.] Petitioner, proceeding pro se, is a state prisoner who seeks relief pursuant to Title 28, United States Code, Section 2254. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B) and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review post-trial petitions for relief and submit findings and recommendations to the District Court.

Petitioner filed this Petition for writ of habeas corpus on October 7, 2011.[2] [Doc. 1.] On March 2, 2012, Respondent filed a motion for summary judgment and a return and memorandum. [Docs. 39, 40.] On March 5, 2012, the Court filed an Order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir.1975), advising Petitioner of the summary

---

[1] Because a prisoner's custodian is the proper respondent in a habeas corpus action, *Rumsfeld v. Padilla*, 542 U.S. 426, 434–35 (2004), Respondent State of South Carolina was terminated as a party and Respondent Warden of Stevenson Correctional Institution was added as a party on November 2, 2011, pursuant to the Court's Order authorizing service of process. [Doc. 12.] Accordingly, throughout this Report and Recommendation, the Court will refer to Respondent Warden of Stevenson Correctional Institution as "Respondent."

[2] A prisoner's pleading is considered filed at the moment it is delivered to prison authorities for forwarding to the court. *See Houston v. Lack*, 487 U.S. 266, 270 (1988). In this case, construing the filing date in the light most favorable to Petitioner, this action was filed on October 7, 2011. [Doc. 1-2 (envelope postmarked October 7, 2011).]

judgment procedure and of the possible consequences if he failed to adequately respond to the motion. [Doc. 41.] On June 11, 2012, Petitioner filed a response in opposition. [Doc. 50.]

Having carefully considered the parties' submissions and the record in this case, the Court recommends Respondent's motion for summary judgment be granted and the Petition be denied.

<u>**BACKGROUND**</u>

Petitioner is currently incarcerated in the Stevenson Correctional Institution of the South Carolina Department of Corrections pursuant to orders of commitment from the Clerk of Court for Richland County. [Doc. 1 at 1.] In July 2002, Petitioner was indicted on charges of first degree burglary and petit larceny. [App. 180–82.[3]] On September 16, 2002, represented by Melora Bentz ("Bentz"), Petitioner pled guilty to the crimes. [App. 2–13.] Petitioner was sentenced to sixteen years imprisonment for the burglary charge and thirty days imprisonment for the petit larceny charge, with the sentences to run concurrently and credit given for time served. [App. 12; *see also* App. 183–84 (sentencing sheets).] Petitioner failed to file a direct appeal.

**PCR Proceedings**

Petitioner, proceeding pro se, filed an application for post-conviction relief ("PCR") on September 16, 2003. [App. 14–19.] Petitioner alleged he was being held in custody unlawfully because the plea court lacked subject matter jurisdiction on the burglary charge, he received ineffective assistance of counsel, and his guilty plea was involuntary,

---

[3] The Appendix can be found at Docket Entry Numbers 39-1 and 39-2.

unknowing, and unintelligent. [App. 16.] Subsequently, represented by Tara Dawn Shurling ("Shurling"), Petitioner filed an amended PCR application alleging 25 additional grounds for relief:

1. Counsel was ineffective for failing to appear at Applicant's Preliminary Hearing, or to ask for a continuance until she could be available.

2. Counsel was ineffective for coercing the Applicant to plead guilty by erroneously telling him that Applicant's co-defendant had pleaded guilty the previous day to a reduced charge in exchange for her testimony against Applicant.

3. Counsel was ineffective for failing to respond to Applicant's repeated requests to view his discovery materials.

4. Counsel was ineffective for failing to secure an early interview with Applicant's co-defendant where she was the only eyewitness who could verify that Applicant was not even at the scene when the crime was committed, and where the co-defendant had confessed to the crime, pled guilty, and her fingerprints directly tied her to the scene.

5. Additionally, Defense counsel was ineffective for failing to discuss with the Applicant the fact that the victim had a vendetta against Applicant, a fact which could have been asserted through cross-examination as a means of impeaching the victim if the Applicant had proceeded to trial.

6. Counsel was ineffective for badgering Applicant into taking a plea.

7. Counsel was ineffective for not thoroughly reviewing the Applicant's indictments with him as soon as possible.

8. Counsel was ineffective for coaching the Applicant concerning how to answer the judge's questions during the plea hearing.

9.     Counsel was ineffective for not following through on client's motion to dismiss and for failing to communicate with Applicant regarding this motion.

10.     Counsel was ineffective for allowing the court to take Applicant's plea without the judge advising him about the consequences of his plea, or giving the Applicant the opportunity to withdraw his plea, or the opportunity to express his concerns to the judge.

11.     Counsel was ineffective for failing to respond to Applicant's inquiries about filing an appeal.

12.     Counsel was ineffective for allowing Applicant to plead guilty to petit larceny in General Sessions court when that charge is jurisdictionally reserved for the magistrate.  Any offense invoving less than $1000.00, §16-13-30 and §22-3-570, is to be heard by a Magistrate.

13.     Counsel was ineffective for failing to move to quash the indictment for failing to state with sufficiency any aggravating circumstance that would bring Applicant's charge within the Statutory requirements for First Degree Burglary.

14.     Counsel was ineffective for failing to challenge the sufficiency of the indictment for First Degree Burglary because it does not specify "what" crime Applicant was charged with committing inside the residence.

15.     Counsel was ineffective for failing to challenge the indictments produced by the grand jury, where the sole witness before that body was the prosecutor.

16.     Applicant believes that the court also lacked subject matter jurisdiction to take his plea because his indictments were not filed with the Clerk of Court before the indictment was taken to the grand jury.

17.     Counsel was ineffective for failing to discuss potential defenses to First Degree Burglary with Applicant.

18.     Counsel was ineffective for failing to adequately investigate the Applicant's case.  Specifically, counsel

failed to explore the fact that affidavits in support of warrants were given with no first hand knowledge; jurisdictional defects; alibi witnesses; cuts on Applicant's wrist; the connection between co-defendant and the complaining witness; and how co-defendant would testify.

19. Counsel was ineffective for coercing the Applicant to plead guilty by telling him that his co-defendant would be testifying against him if he went to trial.

20. Counsel was ineffective advising the Applicant to answer questions the judge posed during the plea proceeding in a certain manner that did not reflect the truth.

21. Counsel was ineffective for failing to advise Applicant of his right to address the Court and present any information he wished to offer in mitigation of punishment.

22. Applicant alleges that his plea was not knowingly and voluntarily entered, inasmuch as he had no knowledge of possible defenses due to the ineffectiveness of counsel.

23. Applicant asserts that his plea was not intelligently entered because he was never fairly apprised of all the elements of the charges against him.

24. Counsel was ineffective in that he failed to inform Applicant of the mandatory minimum sentence for First Degree Burglary.

25. The Applicant alleges that he was never properly advised concerning the advantages of a jury trial.

[App. 30–34.]

On November 15, 2005, an evidentiary hearing was held concerning Petitioner's PCR application. [App. 36–110.] At the hearing, Petitioner, his former co-worker Samuel Cobb ("Cobb"), acquaintance David Cheatham ("Cheatham"), and Shurling's investigator

Leonard Bradley ("Bradley") testified on Petitioner's behalf.[4]  [App. 37.]  Subsequently, Bentz was telephonically deposed.  [App. 131–70.]  On October 8, 2008, the PCR court issued an order of dismissal, denying and dismissing Petitioner's PCR application with prejudice.  [App. 112–22.]  After addressing Petitioner's allegations in turn, the PCR court concluded, "Based on all the foregoing, this Court finds and concludes that the Applicant has not established any constitutional violations or deprivations that would require this court to grant his application."  [App. 121.]  Petitioner timely filed a motion to alter or amend the judgment pursuant to Rule 59(e) of the South Carolina Rules of Civil Procedure, alleging the PCR court failed to address four of Petitioner's 25 claims.  [App. 124–25.]  On December 22, 2008, the PCR court issued an order addressing the four claims and denying Petitioner's motion to alter or amend the judgment.  [App. 129–30.]

On September 18, 2009, M. Celia Robinson of the South Carolina Commission on Indigent Defense filed a petition for writ of certiorari in the South Carolina Supreme Court on Petitioner's behalf.  [Doc. 39-4.]  The petition asserted the following as the sole issue presented:

> Did the PCR judge err in denying relief despite trial counsel's failing to investigate the case and her failure to subpoena favorable witnesses to testify at trial where counsel's failures operated to deprive petitioner of a defense so that he was forced to enter an involuntary guilty plea as the result of ineffective assistance of counsel?

[*Id.* at 3.]  The Supreme Court granted certiorari on November 18, 2010 [Doc. 39-6], but after both parties submitted briefs [Docs. 39-7, 39-8], the Supreme Court dismissed the writ

---

[4] At the hearing, Petitioner proceeded on only the 25 allegations contained in his amended PCR application.  [*See* App. 36–110, 112–22.]

as improvidently granted [Doc. 39-9].  Remittitur was issued on October 13, 2011.  [Doc. 39-10.]

**Habeas Petition**

Petitioner filed this Petition for writ of habeas corpus on October 7, 2011 pursuant to 28 U.S.C. § 2254.  [Doc. 1.]  Petitioner raises the following grounds for relief, quoted substantially verbatim:

**Ground One**:  Ineffective Assistance of Counsel

*Supporting Facts*:  Trial Counsel was Constitutionally ineffective for failing to investigate Petitioner's Case.

**Ground Two**:  Ineffective Assistance of Counsel

*Supporting Facts*:  Trial Counsel was Constitutionally ineffective for failing to Subpoena witnesses.

**Ground Three**:  Ineffective Assistance of Counsel

*Supporting Facts*:  Trial Counsel was Constitutionally ineffective for failing to challenge the Sufficiency of Indictments for first Degree Burglary and Petit Larceny which fail to meet the elements of the offenses.  Specifically, Indictment for first Degree Burglary does not specify "what" crime Petitioner was charged with committing inside the residence.

**Ground Four**:  Ineffective Assistance of Counsel

*Supporting Facts*:  Trial Counsel was Constitutionally ineffective for failing to move to quash Petitioner's defective indictments.  Specifically, his Indictment for first Degree Burglary which failed to state with sufficiency any aggravating circumstance that would bring Petitioner's charge within the Statutory requirement for first Degree Burglary, or any Statutory requirements of elements of Petit Larceny.

**Ground Five**:  Ineffective Assistance of Counsel

*Supporting Facts*:   Trial Counsel was Constitutionally ineffective for failing to respond to Petitioner's repeated requests to view and obtain discovery materials prior to trial.

**Ground Six**:   Ineffective Assistance of Counsel

*Supporting Facts*:   Trial Counsel was Constitutionally ineffective for failing to secure an early interview with Petitioner's co-defendant where she was the only eyewitness and verified that Petitioner was not even at the scene when she committed the crime, and where co-defendant had confessed to the crime, plead guilty to the crime, and her fingerprints directly tied her to the scene.

**Ground Seven**:   Ineffective Assistance of Counsel

*Supporting Facts*:   Trial Counsel was Constitutionally ineffective for coercing Petitioner to plead guilty by erroneously telling him that his co-defendant had pleaded guilty the previous day to a reduced charge in exchange for her alleged testimony against Petitioner if he proceeded with trial.

**Ground Eight**:   Ineffective Assistance of Counsel

*Supporting Facts*:   Trial Counsel was Constitutionally ineffective for failing to discuss with Petitioner and inform him that the Victim had a vendetta against him which could be used as a defense at trial, and asserted as a fact at trial through cross-examination as means of impeaching the Victim if Petitioner had proceeded on through trial.

**Ground Nine**:   Ineffective Assistance of Counsel

*Supporting Facts*:   Trial Counsel was Constitutionally ineffective for failing to inform and advise Petitioner of his right to address the Court on his own behalf where he could present any information he wished to offer in mitigation of punishment and for allowing the Court to take his plea without giving him the opportunity to express any of his concerns to the Judge, or the opportunity to withdraw the plea.

**Ground Ten**: Ineffective Assistance of Counsel

*Supporting Facts*: Petitioner asserts that his guilty plea was not intelligently entered because trial Counsel never fairly apprised him of all the elements of his Charges and the States burden of proof.

**Ground Eleven**: Ineffective Assistance of Counsel

*Supporting Facts*: Petitioner alleges that his guilty plea was not knowingly and voluntarily entered, inasmuch as he had no knowledge of any possible viable defenses to his Charges due to the fact that he received ineffective assistance of trial Counsel.

[*Id.*] As previously stated, on March 2, 2012, Respondent filed a motion for summary judgment. [Doc. 40.] On June 11, 2012, Petitioner filed a response in opposition. [Doc. 50.] Accordingly, Respondent's motion is ripe for review.

## APPLICABLE LAW

**Liberal Construction of Pro Se Petition**

Petitioner brought this action *pro se*, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. Even under this less stringent standard, however, the pro se petition is still subject to summary dismissal. *Id.* at 520–21. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the petitioner's legal arguments for him. *Small v. Endicott*, 998 F.2d 411,

417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude

10

granting the summary judgment motion.  *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."  *Anderson*, 477 U.S. at 248.  Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).  Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

**Habeas Corpus**

*Generally*

Because Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended.  *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett,*

134 F.3d 615 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 410 (2000). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision," and "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011). Moreover, state court factual determinations are presumed to be correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### *Procedural Bar*

Federal law establishes this Court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254. This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. *Id.* The separate but related theories of exhaustion and procedural bypass operate to require a habeas petitioner to first submit his claims for relief

12

to the state courts. A habeas corpus petition filed in this Court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

*Exhaustion*

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

> (b) (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
>
>> (A) the applicant has exhausted the remedies available in the courts of the State; or
>>
>> (B) (i) there is an absence of available State corrective process; or
>>
>> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254. The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. *Id.* § 2254(b)(1)(A). "To satisfy the

exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997). Thus, a federal court may consider only those issues that have been properly presented to the highest state courts with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for PCR. State law requires that all grounds for relief be stated in the direct appeal or PCR application. S.C. App. Ct. R. 203; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767, 770 (S.C. 1976). If the PCR court fails to address a claim as required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment. S.C. R. Civ. P. 59(e). Failure to do so will result in the application of a procedural bar to that claim by the South Carolina Supreme Court. *Marlar v. State*, 653 S.E.2d 266 (S.C. 2007).[5] Further, strict time deadlines govern direct appeal and the filing of a PCR application in the South Carolina courts. For direct appeal, a notice of appeal must be filed and served on all respondents within ten days after the sentence is imposed or after receiving written notice of entry of the order or judgment. S.C. App. Ct. R. 203(b)(2), (d)(1)(B). A PCR application must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

---

[5]In *Bostick v. Stevenson*, 589 F.3d 160 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007 decision in *Marlar*, South Carolina courts had not uniformly and strictly enforced the failure to file a motion pursuant to Rule 59(e) as a procedural bar. 589 F.3d at 162–65. Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the Court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts. *Richardson v. Turner*, 716 F.2d 1059, 1062 (4th Cir. 1983); *Patterson v. Leeke*, 556 F.2d 1168 (4th Cir. 1977). Therefore, in a federal petition for habeas relief, a petitioner may present only those issues that were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of a PCR application, regardless of whether the Supreme Court actually reached the merits of the claim.

*Procedural Bypass*

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner seeks habeas corpus relief based on an issue he failed to raise at the appropriate time in state court, removing any further means of bringing that issue before the state courts. In such a situation, the petitioner has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). The United States Supreme Court has stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See id.* Bypass can occur at any level of the state proceedings if a state has procedural rules that bar its courts from considering claims not raised in a timely fashion. *Id.*

The Supreme Court of South Carolina will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. *See* S.C. Code Ann. § 17-27-90; *Aice v. State*, 409 S.E.2d 392, 394 (S.C. 1991). Further, if a prisoner has failed to file a direct appeal or a PCR application and the deadlines for filing have passed, he is barred from proceeding in state court. S.C. App. Ct. R. 203(d)(3), 243. If the state courts

have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. *See Reed v. Ross*, 468 U.S. 1, 11 (1984); *see also Kornahrens v. Evatt*, 66 F.3d 1350, 1357 (4th Cir. 1995). As the United States Supreme Court explained:

> . . . [State procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed*, 468 U.S. at 10–11.

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986). Further, if the petitioner does not raise cause and prejudice, the court need not consider the defaulted claim. *See Kornahrens*, 66 F.3d at 1363.

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991). Absent a showing of cause and actual prejudice, a federal court is barred from considering the claim. *Wainwright*, 433 U.S. at 87. In such an instance, the exhaustion requirement is technically met, and the rules of procedural bar apply. *Teague v. Lane*, 489 U.S. 288, 297–98 (1989); *Matthews*, 105 F.3d at 915 (citing

*Coleman*, 501 U.S. at 735 n.1; *Teague*, 489 U.S. at 297–98; *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996); *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990)).

### *Cause and Actual Prejudice*

Because the requirement of exhaustion is not jurisdictional, this Court may consider claims that have not been presented to the South Carolina Supreme Court in limited circumstances—where a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or where a "fundamental miscarriage of justice" has occurred, *Murray*, 477 U.S. at 495–96. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim, where the novelty of the constitutional claim is such that its legal basis is not reasonably available to the petitioner's counsel. *Id.* at 487–89; *Reed*, 468 U.S. at 16. Absent a showing of "cause," the court is not required to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error. *Engle v. Isaac*, 456 U.S. 107, 134–35 (1982).

As an alternative to demonstrating cause for failure to raise the claim, the petitioner must show a miscarriage of justice. To demonstrate a miscarriage of justice, the petitioner must show he is actually innocent. *See Murray*, 477 U.S. at 496 (holding a fundamental miscarriage of justice occurs only in extraordinary cases, "where a constitutional violation has probably resulted in the conviction of someone who is actually innocent"). Actual innocence is defined as factual innocence, not legal innocence. *Bousley v. United States*,

523 U.S. 614, 623 (1998). To pass through this actual innocence standard, the petitioner's case must be truly extraordinary. *Murray*, 477 U.S. at 496.

**DISCUSSION**

**Procedurally Barred Grounds**

Procedural default is an affirmative defense that is waived if not raised by respondents. *Gray v. Netherland*, 518 U.S. 152,165–66 (1996). If the defense is raised, it is the petitioner's burden to raise cause and prejudice or actual innocence; if not raised by the petitioner, the court need not consider the defaulted claim. *Kornahrens v. Evatt*, 66 F.3d 1350 (4th Cir. 1995). Here, Respondent concedes Grounds One and Two are actually exhausted and Grounds Three through Eleven are technically exhausted. [Doc. 39 at 18.] However, Respondent argues Grounds Three through Eleven are procedurally barred because Petitioner failed to raise these claims to the South Carolina Supreme Court and is unable to return to state court to seek review of these claims by the South Carolina Supreme Court. [*Id.* at 21.] The Court agrees.

Grounds Three through Eleven are procedurally barred because Petitioner failed to raise these grounds for relief to the highest state court. Grounds Three through Eleven were raised to and ruled upon by the PCR court [App. 30–34, 112–22, 129–30] but were not presented to the South Carolina Supreme Court in Petitioner's petition for writ of certiorari [*see* Docs. 39-4, 39-7]. Because Grounds Three through Eleven were not fairly presented to the South Carolina Supreme Court, they are procedurally barred from federal

habeas review absent a showing of cause and actual prejudice.[6] *See Coleman*, 501 U.S. 722 (stating that if an issue is not properly raised to the state's highest court and would be procedurally impossible to raise now, then it is procedurally barred from federal habeas review); *Wainwright*, 433 U.S. at 87; *Matthews*, 105 F.3d at 915.

The existence of cause must ordinarily turn on whether the petitioner can show some objective factor external to the defense impeded counsel's or the petitioner's efforts to comply with the state's procedural rule. *Murray*, 477 U.S. at 488. In this case, Petitioner has failed to articulate cause for procedurally defaulting Grounds Three through Eleven. Petitioner filed a petition for writ of certiorari in which these issues could have been raised but were not, even though other issues were properly raised. Petitioner argues the claim raised in his petition for writ of certiorari encompasses all of the claims raised to this Court, and he "cannot be held accountable for the method in which his appellate defense counsel chose to submit all his issues as incorporated into one issue in his petition and brief to the South Carolina Supreme Court." [Doc. 50 at 19, 23.] However, the Court finds the petition for writ of certiorari raised only the claims presented as Grounds One and Two in this Court, and in any event, Petitioner's counsel's failure to raise additional issues in the

_____

[6] Petitioner argues Grounds Three through Eleven are not procedurally defaulted because no South Carolina state court stated that these claims were procedurally defaulted and there is no adequate state ground from concluding these claims were procedurally defaulted. [Doc. 50 at 17–20.] However, as explained above, if a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and, absent a showing of cause and actual prejudice, a federal court is barred from considering the claim. *Coleman*, 501 U.S. at 731–32; *Wainwright*, 433 U.S. at 87. While the exhaustion requirement is technically met in such an instance, the rules of procedural bar apply, barring the claim from federal habeas review. *Teague*, 489 U.S. at 297–98; *Matthews*, 105 F.3d at 915 (citation omitted). Here, because Petitioner failed to raise Grounds Three through Eleven to the South Carolina Supreme Court and the South Carolina Supreme Court would not allow Petitioner to raise them in a new petition for writ of certiorari to that court, *see* S.C. Code Ann. § 17-27-90; *Aice*, 409 S.E.2d at 394, Petitioner is procedurally barred from raising those claims in this Court.

petition for writ of certiorari to the South Carolina Supreme Court does not amount to an objective factor *external* to the defense that impeded efforts to comply with South Carolina's procedural rules. *See Murray*, 477 U.S. at 488. Thus, Petitioner has failed to demonstrate sufficient cause for failing to raise Grounds Three through Eleven to the South Carolina Supreme Court, and these claims are barred from federal habeas review.

**Merits of Remaining Grounds**

In Ground One, Petitioner argues his trial counsel, Bentz, rendered ineffective assistance because she failed to investigate Petitioner's case. [Doc. 1 at 5.] In Ground Two, Petitioner contends he received ineffective assistance of counsel because Bentz failed to subpoena witnesses. [*Id.* at 6.] The Court concludes Petitioner is not entitled to federal habeas corpus relief based on the allegations raised in Grounds One and Two.

Under the AEDPA, a federal court may not grant habeas relief unless the underlying state court decision was contrary to or an unreasonable application of federal law, as determined by the United States Supreme Court, 28 U.S.C. § 2254(d)(1), or based on an unreasonable determination of the facts before the court, *id.* § 2254(d)(2). The Supreme Court has held the "contrary to" and "unreasonable application of" clauses present two different avenues for relief. *Williams*, 529 U.S. at 405 ("The Court of Appeals for the Fourth Circuit properly accorded both the 'contrary to' and 'unreasonable application' clauses independent meaning."). The Court stated there are two instances when a state court decision will be contrary to Supreme Court precedent:

> A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . . A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts

that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent.

*Id.* at 405–06.  On the other hand, a state court decision is an unreasonable application of Supreme Court precedent when the decision "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case."  *Id.* at 407–08; *see also Richter*, 131 S. Ct. at 786 ("Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court. . . . It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable.").  Finally, a decision cannot be contrary to or an unreasonable application of Supreme Court precedent unless applicable Supreme Court precedent exists; without applicable Supreme Court precedent, there is no habeas relief for petitioners.  *Virsnieks v. Smith*, 521 F.3d 707, 716 (7th Cir. 2008) (citing *Lockhart v. Chandler*, 446 F.3d 721, 724 (7th Cir.2006); *Simpson v. Battaglia*, 458 F.3d 585, 597 (7th Cir.2006)); *see Bustos v. White*, 521 F.3d 321, 325 (4th Cir. 2008).

When evaluating a habeas petition based on a claim of ineffective assistance of counsel, assuming the state court applied the correct legal standard—the Supreme Court's holdings in *Strickland v. Washington*, 466 U.S. 668 (1984)—"[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable.  This is different from asking whether defense counsel's performance fell below *Strickland*'s

standard."[7]  *Richter*, 131 S. Ct. at  785.  "A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself."  *Id.*; *see also Yarborough v. Gentry*, 540 U.S. 1, 6 (2003) (stating judicial review of counsel's performance is "doubly deferential when it is conducted through the lens of federal habeas").  Even if a state court decision questionably constitutes an unreasonable application of federal law, the "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  *Richter*, 131 S. Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  Thus, in such situations, the habeas court must determine whether it is possible for fairminded jurists to disagree that the arguments or theories supporting the state court's decision are inconsistent with Supreme Court precedent.  *Id.*

Here, the PCR court held an evidentiary hearing, made findings as to the credibility of the witnesses, and outlined a factual basis for declining to find Bentz's representation fell below the *Strickland*, *Hill v. Lockhart*, 474 U.S. 52 (1985) (stating standard for ineffective assistance of plea counsel), and applicable state law standards.  [App. 36–110

---

[7] In *Strickland*, the Supreme Court established that to challenge a conviction based on ineffective assistance of counsel, a prisoner must prove two elements: (1) his counsel was deficient in his representation and (2) he was prejudiced as a result.  466 U.S. at 687.  To satisfy the first prong, a prisoner must show that "counsel's representation fell below an objective standard of reasonableness."  *Id.* at 688.  To satisfy the second prong, a prisoner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 692.  In the specific context of a guilty plea, to satisfy the second prong, a prisoner must show that "there is a reasonable probability that, but for counsel's errors, [the prisoner] would not have pleaded guilty and would have insisted on going to trial."  *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).  The Supreme Court has cautioned that "[j]udicial scrutiny of counsel's performance must be highly deferential," and "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Strickland*, 466 U.S. at 689.

(evidentiary hearing), 115–21 (PCR's findings of fact, conclusions of law, and analysis).]

In pertinent part, the PCR court found,

> Prejudice from trial counsel's failure to interview or call witnesses cannot be shown where the witnesses do not testify at the post conviction relief hearing. The Applicant's mere speculation as to what witnesses' testimony would have been cannot, by itself, satisfy the burden of showing prejudice. Applicants must produce the testimony of a favorable witness or otherwise offer the testimony in accordance with the rules of evidence at the PCR hearing in order to establish prejudice from the witness'[s] failure to testify at trial. Applicant did not present any testimony from outside witnesses that would have assisted in his defense or made a difference if the case had proceeded to trial. The co-defendant did not appear to testify. It is not proper for this Court to speculate as to what the testimony would be from those witnesses.

[App. 120 (citation omitted).]

Upon review, the Court determines the PCR court's denial of Petitioner's ineffective assistance claim was neither contrary to nor an unreasonable application of applicable Supreme Court precedent. First, the PCR court applied the *Strickland* and *Hill* standards, which are the applicable Supreme Court precedents. Second, the record fails to demonstrate the PCR court confronted a set of facts that were materially indistinguishable from those considered in a decision of the Supreme Court but arrived at a result different from the Supreme Court precedent. Thus, the Court concludes the PCR court's decision was not contrary to applicable Supreme Court precedent.

Further, the record supports the PCR court's decision, which demonstrates the PCR court's decision was not an unreasonable application of *Strickland* or *Hill*. For example, Petitioner testified at the PCR hearing that Cheatham had driven Petitioner to the victim's

home after Petitioner's co-defendant had driven to the victim's home.[8] [App. 45–46.] Testifying at the PCR hearing, Cheatham corroborated Petitioner's allegations concerning Cheatham's role in the events leading to Petitioner's arrest. [App. 86–89.] However, Bentz testified at her deposition that she pursued Petitioner's alibi and all the witnesses Petitioner named to her, but if the case had proceeded to trial, an alibi defense would not have been the primary defense. [App. 149–50.] The PCR court, who heard the testimony and had the opportunity to observe the witnesses at the hearing, determined Petitioner failed to present testimony from outside witnesses that would have assisted his defense or made a difference if he had proceeded to trial. [App. 120.] Therefore, the Court finds the PCR court's decision was not contrary to or an unreasonable application of applicable Supreme Court precedent, and Petitioner is not entitled to habeas corpus relief based on Grounds One and Two.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends that Respondent's motion for summary judgment be GRANTED and the Petition be DENIED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

July 12, 2012
Greenville, South Carolina

---

[8] Thus, Petitioner represented to the PCR court that he had an alibi that he had shared with Bentz. [*See* App. 50–52.]